UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GROS, ET AL                          CIVIL ACTION

VERSUS                               NO: 12-2322
                                     c/w 12-2334
                                     c/w 12-2374

NEW ORLEANS CITY, ET AL              SECTION: J

<u>**ORDER AND REASONS**</u>

Before the Court are three motions for attorneys' fees and
costs filed by Plaintiffs Paul Gros, Kelsey McCauley, and the Bible
Believers association and its associates **(Case No. 12-2322, Rec.
Docs. 105, 106, & 107)**, as well as an *Opposition* filed by all
Defendants **(Case No. 12-2322, Rec. Doc. 112)**. Having considered the
motions, the parties' submissions, the record, and the applicable
law, the Court finds, for the reasons expressed below, that the
motions for attorneys' fees and costs should be **GRANTED.**

**PROCEDURAL AND FACTUAL BACKGROUND**

New Orleans City Ordinance § 54-419(c)(4) previously stated,
in pertinent part:

> ***No person, in any public or private place, shall use
> offensive, obscene or abusive language***, or grab, follow
> or engage in conduct which reasonably tends to arouse
> alarm or anger in others, or walk, stand, sit, lie, or

1

place an object, including signage or structures, in such
a manner as to block passage by another person or a
vehicle, or to require another person or a driver of a
vehicle to take evasive action to avoid physical contact.
A person shall be guilty of obstructive interference if,
in a public place, he intentionally obstructs pedestrian
or vehicular traffic. It shall be unlawful to operate or
allow the operation of any sound amplification equipment
in the public right-of-way on Bourbon Street, including
adjacent sidewalks, between the hours of sunset and
sunrise. ***It shall be prohibited for any person or groups
of persons to loiter or congregate on Bourbon Street for
the purpose of disseminating any social, political or
religious message between the hours of sunset and
sunrise.*** Acts authorized by permit issued pursuant to the
parade ordinances ... shall not constitute interference
with pedestrian or vehicular traffic.

(Case No. 12-2322, Rec. Doc. 74-4, p. 3) (emphasis added).

On September 1, 2012, New Orleans police officers arrested
several of the Bible Believers Plaintiffs (Plaintiffs O'Connell,
Craft, Brown, Guevara, and Montes) for violating the provisions of
the ordinance pertaining to the dissemination of religious messages
on Bourbon Street. Two other Bible Believers Plaintiffs (Plaintiffs

2

Chavez and Cranford) were threatened with arrest but were not actually arrested. On May 15, 2012 and September 14, 2012, respectively, Plaintiffs Gros and McCauley were threatened with arrest for participating in similar activities, but they were not actually arrested. Plaintiff Gros, Plaintiff McCauley, and the Bible Believers Plaintiffs each filed § 1983 claims in federal court, and the cases were consolidated.

Plaintiffs sought a temporary restraining order, and the Court granted one, enjoining the City from enforcing the ordinance and setting a preliminary injunction hearing. The preliminary injunction hearing was later cancelled because the City informed Plaintiffs and the Court that the City Counsel intended to amend the ordinance to address Plaintiffs' concerns. All Plaintiffs filed motions for summary judgment and supplemental briefing, requesting that the Court declare the city ordinance unconstitutional and permanently enjoin Defendants from enforcing it. All Plaintiffs also requested nominal damages in the amount of $1.00 each for violations of their First Amendment rights, as well as costs and attorneys' fees. Additionally, the Bible Believers Plaintiffs requested compensatory damages for those members who were arrested.

After the motions for summary judgment were submitted, the City Counsel amended the ordinance, and the current ordinance reads as follows:

> ***No person, in any public place, shall use obscene
> language***, or grab, or follow another for the sole purpose
> of harassment, or walk, stand, sit, lie, or place an
> object in such manner as to block passage by another
> person or a vehicle, or to require another person or a
> driver of a vehicle to take evasive action to avoid
> physical contact. A person shall be guilty of obstructive
> interference if, in a public place, he intentionally
> obstructs pedestrian or vehicular traffic. Acts
> authorized by permit issued pursuant to the Parade
> Ordinances ... shall not constitute interference with
> pedestrian or vehicular traffic.

CODE OF ORDINANCES – CITY OF NEW ORLEANS, LOUISIANA, § 54-419(c)(4),
*available at* http://library.municode.com/index.aspx?clientId=11040
(emphasis added).

The Court ordered the parties to submit supplemental briefing
to address the effect that the amendment would have on the issues
in this case. In their supplemental brief, the Bible Believers
Plaintiffs argued that the provision in the amended ordinance
regarding obscenity remained unconstitutional because it violated
the First Amendment. After reviewing the motions and the
supplemental briefs, the Court granted the motions for summary
judgment in part and denied them in part (Case No. 12-2322, Rec.

4

Doc. 104). The Court denied Plaintiffs' claims for declaratory and injunctive relief as moot. The Court also dismissed with prejudice the Bible Believers Plaintiffs' claim that the amended ordinance provision regarding obscenity was unconstitutional. Additionally, the Court awarded nominal damages in the amount of $1.00 to each Plaintiff for violation of his or her constitutional rights. Defendants and the Bible Believers Plaintiffs later agreed to a settlement on the issue of compensatory damages. All Plaintiffs sought attorneys' fees and costs, and the Court ordered Plaintiffs to submit separate motions for that relief. It is those pending motions for attorneys' fees and costs to which the Court now turns.

Plaintiff McCauley has requested a total award of $47,778.31 for attorneys' fees and costs. Plaintiff Gros has requested a total award of $199,113.84. The Bible Believers Plaintiffs have requested a total award of $107,652.90, plus interest. The Bible Believers Plaintiffs also request that the Court award an adjustment for the attorneys' fees expended in pursuing the instant motion; that the Court either award fees based on current standards or award interest to account for inflation and other factors; and that the Court allow them to supplement their motion to account for additional attorneys' fees and costs related to their claim for compensatory damages.

**PARTIES' ARGUMENTS**

Plaintiffs argue that they are prevailing parties because the

Court awarded nominal damages, and therefore, they are entitled to reasonable attorneys' fees and costs. Defendants argue that Plaintiffs are not prevailing parties, and thus are not entitled to attorneys' fees and costs, because Plaintiffs were never granted a preliminary injunction and because the City voluntarily amended the ordinance in response to Plaintiffs' filing suit.

Each Plaintiff has submitted information regarding the number of hours billed and the hourly rates of their attorneys, as well as documentation pertaining to costs paid. Each Plaintiff argues that the amounts requested for attorneys' fees and costs are reasonable, but Defendants claim that they are unreasonable because the City immediately agreed to amend the ordinance, and therefore the case "was essentially settled before it even began." (Case No. 12-2322, Rec. Doc. 112, p. 3).

## DISCUSSION

### A. Prevailing Party Status

In § 1983 actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ... ." 42 U.S.C.A. § 1988(b) (West 2000). "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Any "plaintiff who wins nominal damages is a

prevailing party under § 1988." *Id.* at 112. This is because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 112-13. It is therefore clear that in this case, all Plaintiffs are prevailing parties because the Court has awarded nominal damages in the amount of $1.00 to each Plaintiff.

Defendants argue that according to the Fifth Circuit's opinion in *Dearmore v. City of Garland*, Plaintiffs are not prevailing parties, and thus are not entitled to attorneys' fees and costs, because Plaintiffs were never granted a preliminary injunction and because the City voluntarily amended the ordinance in response to Plaintiffs' filing suit. In *Dearmore*, the plaintiff filed a § 1983 complaint against the City of Garland, alleging that a City ordinance violated the Fourth and Fourteenth Amendments. *Dearmore v. City of Garland*, 519 F.3d 517, 519 (5th Cir. 2008). The district court denied the plaintiff's motion for a temporary restraining order but later granted his motion for a preliminary injunction, enjoining the City from enforcing a particular portion of the ordinance. *Id.* The City informed the plaintiff that it was not necessary for him to post a bond to enforce the preliminary injunction because the City planned to amend the ordinance in response to the preliminary injunction. *Id.* at 520. After the City

amended the ordinance, the district court dismissed the plaintiff's remaining claims as moot. *Id.* On appeal, the Fifth Circuit addressed the question of whether the plaintiff qualified as a prevailing party based on his having obtained a preliminary injunction and the City's subsequent mooting of the case before trial in direct response to that preliminary injunction. *Id.* at 521. The court held that the plaintiff was, in fact, a prevailing party. *Id.* at 524. The court stated:

> Under these facts, to qualify as a prevailing party under § 1988(b), we hold that the plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits. Such a test satisfies [Supreme Court precedent] because it requires that a party obtain a judicial ruling which results in a material change in the legal relationship between the parties.

*Id.*

The *Dearmore* court found that the third element was satisfied

because "the district court's grant of the preliminary injunction directly caused the City to amend the offending portion of the Ordinance, thereby mooting the case and preventing [the plaintiff] from obtaining final relief on the merits." *Id.* at 525. The court also stated in dicta:

> We note that this is not a case in which the City voluntarily changed its position *before* judicial action was taken. Indeed, if the City had mooted the case through amending the Ordinance before the court granted the preliminary injunction, then [the plaintiff] could not qualify as a prevailing party ... .

*Id.*

Here, Defendants argue that the City voluntarily amended the ordinance and thus mooted the case *before* the Court granted a preliminary injunction and therefore, Plaintiffs are not prevailing parties under *Dearmore*. However, the Court notes that the circuit court in *Dearmore* made absolutely no mention of nominal damages, and nominal damages do not appear to have been awarded by the *Dearmore* district court. The Supreme Court in *Farrar* made it clear that an award of nominal damages "modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*, 506 U.S. at

9

112-13. In this case, the Court has awarded nominal damages in the amount of $1.00 to each Plaintiff for violation of his or her constitutional rights. (Case No. 12-2322, Rec. Doc. 104, p. 15-16).[1] It is therefore clear that all Plaintiffs are prevailing parties and thus are potentially entitled to attorneys' fees and costs.

**B. Whether Plaintiffs Should be Awarded Attorneys' Fees**

The Fifth Circuit has stated: "We cannot overemphasize the concept that a district court has broad discretion in determining the amount of a fee award." *Hopwood v. State of Texas*, 236 F.3d 256, 277 (5th Cir. 2000) (cited by *Dearmore*, 519 F.3d at 520) (internal citations omitted). Even when a plaintiff receives an award of nominal damages and is thus technically a prevailing party, the court must, in its discretion, determine what a reasonable fee might be under the circumstances of the particular case. *Farrar*, 506 U.S. at 114-15. The most important factor for the court to consider in determining whether a fee award is reasonable "is the degree of success obtained." *Id.* at 114 (internal citations omitted). "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the ... factors bearing on reasonableness ... or

---

[1] Additionally, the Court granted a temporary restraining order enjoining the City from enforcing the ordinance. The Court would most certainly have also granted a preliminary injunction if the preliminary injunction hearing had not been cancelled.

multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* at 115 (internal citations omitted). The Supreme Court has held that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." *Id.*

In *Farrar*, the Supreme Court found that the plaintiffs were prevailing parties because they were awarded nominal damages. *Id.* at 116. However, the Court found that despite their prevailing party status, the plaintiffs were not entitled to attorneys' fees considering the fact that the plaintiffs failed in their claim for $17 million in compensatory damages because they failed to prove an essential element of their claim, namely that the defendants' conduct was the proximate cause of any injury that the plaintiffs suffered. *Id.* at 106-07, 114. The Court found that the "litigation accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some unspecified way." *Id.* at 114. (internal citations omitted).

In *Riley*, a case with distinguishable facts from those in *Farrar*, the Fifth Circuit reasoned:

> [W]e do not believe that *Farrar* counsels against an award
> of fees in this case. In *Farrar,* a civil rights action

brought under 42 U.S.C. § 1983, the plaintiff sought $17 million in damages. The jury found that his civil rights had been violated, and on appeal this Court awarded him $1 in nominal damages but denied his award of attorneys' fees. In affirming the denial of the award of attorneys' fees under § 1988, the Supreme Court determined that the nominal award the plaintiff received was a mere "technical victory" which the Court ruled merited no award of fees since he failed to prove an essential element of his claim for monetary relief. However, *Farrar* is illustrative of cases where the plaintiff sought only money damages and was essentially unsuccessful since he did not achieve in any way the ultimate goal of the litigation. We do not have such a case before us today. In the case *sub judice,* the Appellants achieved more than the type of "technical victory" won by the plaintiff in *Farrar.* The Appellants here requested first and foremost injunctive relief and secondarily monetary damages and were, for the most part, successful in obtaining the relief they sought. The Appellants obtained, in addition to the nominal damages, injunctive relief by way of a change in the Appellees' conduct that redressed the Appellants' grievances, thus altering the legal relationship between the parties. Even if Appellants

received only nominal relief, as noted by Justice
O'Connor's concurrence, "nominal relief does not
necessarily a nominal victory make." *Farrar,* 506 U.S. at
121, 113 S.Ct. at 578. Thus, in many instances, a nominal
recovery may very well not derogate from the importance
of the victory. Accordingly, we conclude that in this
case *Farrar* is not controlling.

*Riley v. City of Jackson, Miss.*, 99 F.3d 757, 759-60 (5th Cir.
1996) (footnote omitted).

The facts in the instant case are also distinguishable from
the facts in *Farrar*. Here, Plaintiffs Gros and McCauley, who were
threatened with arrest but were not actually arrested, sought
declaratory and injunctive relief, as well as nominal damages, but
did not seek compensatory damages. (Case No. 12-2322, Rec. Doc. p.
1 & 9; Case No. 12-2334, Rec. Doc. 1, p. 1 & 8). All of the Bible
Believers Plaintiffs sought declaratory and injunctive relief, as
well as nominal damages, and the Bible Believers Plaintiffs who
were actually arrested (Plaintiffs O'Connell, Craft, Brown,
Guevara, and Montes) additionally sought compensatory damages (Case
No. 12-2374, Rec. Doc. 1, p. 23-24). All Plaintiffs won the nominal
damages that they sought, and they would also have been awarded
declaratory and injunctive relief but for the City's amendment of
the ordinance. The Bible Believers Plaintiffs have also recovered

13

the compensatory damages they sought through a settlement agreement with Defendants. Therefore, all Plaintiffs in this matter have, for the most part, been successful in obtaining the relief they sought. The Court's award of nominal damages to these Plaintiffs did not indicate a nominal victory but rather marked the Court's determination that the unamended ordinance was facially unconstitutional. Therefore, Plaintiffs should be awarded some amount of attorneys' fees, and the Court need only determine what amount of attorneys' fees is reasonable for Plaintiff.

### C. Reasonable Attorneys' Fee Awards: Two-Step Analysis

The Fifth Circuit uses a two-step analysis to calculate fee awards. *Hernandez v. U.S. Customs & Border Prot. Agency*, No. 10-4602, 2012 WL 398328, at *13 (E.D. La. Feb. 7, 2012) (Barbier, J.). In the first step, the Court must calculate the "lodestar," which is accomplished "by multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district." *Id.* (internal citations omitted).

In determining the number of hours billed for purposes of calculating the lodestar, the Court must "determine whether the requested hours expended by Plaintiffs' counsel were reasonable in light of the facts of the case and the work performed. The burden of proving the reasonableness of the hours expended is on the fee applicant." *Hernandez*, 2012 WL 398328, at *13 (internal citations omitted). The Court must also determine whether the records show

14

"that Plaintiffs' counsel exercised billing judgment" and "should
exclude all time billed for work that is excessive, duplicative, or
inadequately documented." *Id.* at *14 (internal citations omitted).

In determining the hourly rates for purposes of calculating
the lodestar, the Court must determine a reasonable rate for each
attorney "at the prevailing market rates in the relevant community
for similar services by attorneys of reasonably comparable skills,
experience, and reputation." *Id.* (internal citations omitted). The
burden is on the fee applicant to submit "satisfactory evidence
that the requested rate is aligned with prevailing market rates."
*Id.* (internal citations omitted).

Next, "the second step allows the Court to make downward
adjustments, or in rare cases, upward adjustments, to the lodestar
amount based upon consideration of the twelve *Johnson* factors." *Id.*
The twelve *Johnson* factors are the following:

> (1) the time and labor required
>
> (2) the novelty and difficulty of the questions
>
> (3) the skill requisite to perform the legal
>     service properly
>
> (4) the preclusion of other employment by the
>     attorney due to acceptance of the case
>
> (5) the customary fee
>
> (6) whether the fee is fixed or contingent

(7) time limitations imposed by the client or the circumstances

(8) the amount involved and the results obtained

(9) the experience, reputation, and ability of the attorneys

(10) the "undesirability" of the case

(11) the nature and length of the professional relationship with the client

(12) awards in similar cases

*Johnson v. Ga. Highway Exp. Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Courts apply "a strong presumption that [the lodestar] figure is reasonable." *Hernandez*, 2012 WL 398328, at *16. Nevertheless,

[T]he Court must still consider the twelve *Johnson* factors ... . Though the Court need not be "meticulously detailed" in its analysis, it must nonetheless articulate and clearly apply the twelve factors to determine how each affects the lodestar amount. The Court should give special consideration to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of

16

counsel. ... However, to the extent that a factor has been previously considered in the calculation of the benchmark lodestar amount, a court should not make further adjustments on that basis.

*Id.* (internal citations omitted).

### D. Lodestar Calculations

### 1. Plaintiff McCauley's Attorneys

### a. Justin Harrison

Plaintiff McCauley seeks attorneys' fees for 130.5 hours billed by Mr. Harrison at the rate of $270 per hour. According to his *Affidavit* (Case No. 12-2322, Rec. Doc. 106-2), Mr. Harrison has been practicing law for approximately ten (10) years and is the Legal Director of the American Civil Liberties Union (ACLU) of Louisiana, located in New Orleans. Mr. Harrison claims to have several years experience with civil rights cases, and he states that the ACLU does *pro bono* work exclusively.

Mr. Harrison has calculated that he expended 136.6 total hours in this case, and he has excluded 6.1 hours for time billed to a discovery dispute between Plaintiff Gros, the Bible Believers Plaintiffs, and Defendants, which leaves him with a total of 130.5 billable hours (Case No. 12-2322, Rec. Doc. 105-3). Mr. Harrison therefore contends that his total attorneys' fees should be $35,235.

### b. Loretta Mince and Her Associates,

### Alysson Mills and Eric Gerard

Plaintiff McCauley also seeks attorneys' fees for 18.6 hours billed by Ms. Mince at the rate of $350 per hour. According to her *Affidavit* (Case No. 12-2322, Rec. Doc. 106-7), Ms. Mince is a partner at the New Orleans law firm of Fishman, Haygood, Phelps, Walmsley, Willis & Swanson. She claims that she regularly handles First Amendment cases. The Court lacks information regarding how many years Ms. Mince has been practicing law. It does not appear that Ms. Mince has exercised billing judgment to exclude any hours, and she therefore contends that her total fee award should be $6,510.

Plaintiff McCauley also seeks attorneys' fees for 13.5 hours and 6.7 hours billed, respectively, by Alysson Mills and Eric Gerard, two associates at Ms. Mince's law firm, both at $260 per hour. The Court lacks information regarding how many years Ms. Mills and Mr. Gerard have been practicing law and regarding their respective levels of expertise in constitutional or civil rights cases. It does not appear that either Ms. Mills or Mr. Gerard have exercised billing judgment to exclude any hours, which leaves their total requested fee at $5,252.

### c. Defendants' Arguments

Defendants contend that a reasonable hourly rate for Mr. Harrison's services is only $200 per hour because he has less than

18

ten (10) years experience. Defendants also argue that given Ms. Mince's experience, her services should only be billed at $300 per hour. Additionally, Defendants maintain that a reasonable rate for the services of both of Ms. Mince's associates, Ms. Mills and Mr. Gerard, is $185.00 per hour. Defendants also claim that the number of hours billed by Mr. Harrison and Ms. Mince should be reduced because those two attorneys billed for duplicative tasks and for superfluous communications between themselves. Specifically, Defendants point out that both attorneys billed time for drafting the complaint. According to Defendants, it was inefficient for two separate organizations, Ms. Mince's law firm and the ACLU, to both represent a single person, and so the billable hours should be reduced to the extent of any hours bills for strategy conferences between the attorneys.

### d. Resolution

The Court will first determine the reasonableness of the hourly rate for each attorney. Only two years ago, in 2012, this Court found that in the Eastern District of Louisiana, a reasonable hourly rate for an attorney who had been practicing law for over eight (8) years and specialized in the field of law at issue was $300.00 per hour, and that a reasonable hourly rate for an attorney who had been practicing law for approximately two (2) years and specialized in the field of law at issue was $180.00 per hour.

19

*Hernandez*, 2012 WL 398328, at *14-16. The Court arrived at its conclusion after an analysis of multiple cases in this district:

> *See, e.g. Smith v. Sprint/United Mgmt. Co.,* 2011 [WL] 6371481 (E.D. La. Dec. 20, 2011) (awarding $290.00/hour for a partner with 16 years experience and $240/hour for an associate with 8 years of experience); *Construction South, Inc. v. Jenkins,* 2011 WL 3892225 (E.D. La. Sept.2, 2011) (awarding $350/hour for two partners with 36 and 30 years of experience; $200/hour for an associate with four years of experience; and $180/hour for an associate with two years of experience); *Atel Mar. Investors, LP v. Sea Mar Mgmt., LLC,* 2011 WL 2550505 (E.D. La. June 27, 2011) (awarding $250 for partner with 35 years of experience; $250 for a partner with 11 years of experience; and $175 for an associate with 2 years of experience); *Entergy La., L.L.C. v. The Wackenhut Corp.,* 2010 WL 4812921 (E.D. La. Nov.17, 2010) (awarding $175.00/hour to attorney with 16 years of experience); *Wilson v. Tulane Univ.,* 2010 WL 3943543 (E.D. La. Oct.4, 2010) (awarding $250.00/hour and $160.00/hour to attorneys with 25 and four years experience respectively); *Hebert v. Rodriguez,* 2010 WL 2360718 (E.D. La. June 8, 2010) (awarding $300.00/hour to partner with 33 years of experience); *Gulf Coast*

20

*Facilities Mgmt., L.L.C. v. BG LNG Servs., L.L.C.,* 2010 WL 2773208 (E.D. La. July 13, 2010) (awarding $300.00/hour to attorneys with 17 years experience and $180.00/hour and $135.00/hour to attorneys with seven years and two years experience respectively); *Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.,* 2010 WL 6300009 (E.D. La. Feb. 19, 2010) (awarding $250.00/hour, $210.00/hour, and $180.00/hour to attorneys with 20, 10, and 4 years of legal experience, respectively); *Marks v. Standard Fire Ins. Co.,* 2010 WL 487403 (E.D. La. Feb. 3, 2010) (awarding $185.00/hour to attorney with seven years of experience).

*Id.* at *15.

Here, Mr. Harrison has been practicing law for approximately ten (10) years and has several years experience with civil rights cases. Given the cases discussed above, the Court finds that a fee of $210 per hour for Mr. Harrison's services is reasonable. Ms. Mince, a partner at the New Orleans law firm of Fishman, Haygood, Phelps, Walmsley, Willis & Swanson, has been practicing law for sixteen (16) years and is a partner at the firm who regularly handles First Amendment cases.[2] The Court therefore finds that a

---

[2] The Court retrieved this information from the law firm's website: http://fishmanhaygood.com/attorneys/loretta-g-mince.

fee of $275 per hour for Ms. Mince's services is reasonable. Ms. Mills, an associate at Ms. Mince's law firm, has been practicing law for six (6) years.[3] The Court therefore finds that a fee of $185 per hour for Ms. Mills's services is reasonable. Mr. Gerard, who is no longer employed at Ms. Mince's firm but was previously an associate there, appears to have been practicing law for five (5) years, since 2009.[4] The Court therefore finds that a fee of $185 per hour for Mr. Gerard's services is reasonable.

With respect to the reasonable number of hours billed, Mr. Harrison billed 9.6 hours spent communicating with Ms. Mince, and Ms. Mince billed 3 hours for time spent solely communicating with Mr. Harrison. Defendants argue that these hours represent superfluous communications and should be reduced. Additionally, Mr. Harrison billed 2.3 hours for tasks that are largely clerical, such as telephone calls with the undersigned's law clerk, telephone calls with clerks office employees, and e-filing documents on the CM/ECF system. "Numerous courts have held that the time spent on legal research and more complex tasks should not be accorded the same weight as the time spent on the telephone." *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 690-692 (S.D. Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978). Hours spent on "telephone

---

[3] The Court retrieved this information from the law firm's website: http://fishmanhaygood.com/attorneys/alysson-l-mills.

[4] The Court retrieved this information from various sources, including: https://www.linkedin.com/pub/eric-gerard/5b/698/a36 and http://www.zoominfo.com/p/Eric-Gerard/1298527114.

conversations and other informal communications," as well as time spent on "clerical tasks" that could be performed by non-lawyers should be billed at a lower hourly rate. *Id.* The Court finds that Mr. Harrison's piecemeal billing of 9.6 hours of communication with Ms. Mince over telephone and email is excessive and should be reduced to 3 hours, which is the number of hours that Ms. Mince reports spending on communicating with Mr. Harrison. Therefore, Mr. Harrison's 9.6 hours will be reduced by 6.6 hours. The Court also finds that Mr. Harrison's telephone calls with the law clerk and the clerk's office, as well as his entry of documents onto the CM/ECF system, are tasks that could have been performed by secretaries and thus should not be billed at an attorney rate. The Court will therefore deduct the 2.3 hours spent on clerical tasks from Mr. Harrison's total attorney fee award.

Defendants also argue that Ms. Mince and Mr. Harrison should not both be permitted to bill for time spent drafting the complaint. Ms. Mince billed 3 hours for this task, and Mr. Harrison billed 5.9 hours. All hours billed by both Ms. Mince and Mr. Harrison related to the complaint were billed on September 20 and 21, 2012. It appears that Mr. Harrison drafted the complaint, Ms. Mince reviewed and edited it, and Mr. Harrison implemented changes that Ms. Mince suggested. The Court finds that these tasks are not duplicative, and the time billed is not excessive; therefore, the Court will not reduce the number of hours billed.

Additionally, Mr. Gerard billed 4 hours labeled solely as "Research" without any explanation of the topic of such research. The Court finds that these 4 hours are inadequately documented and therefore should be deducted from Mr. Gerard's total attorney fee award.

In conclusion, the reasonable number of hours expended by each of Plaintiff McCauley's attorneys is as follows:

| Attorney | Hours Requested | Excessive Communication | Clerical Tasks | Insuff. Documentation | Reas. Hours | Hourly Rate | Fee |
|---|---|---|---|---|---|---|---|
| Harrison | 130.50 | - 6.60 | - 2.30 | - 0 | 121.60 | $210.00 | $25,536.00 |
| Mince | 18.60 | - 0 | - 0 | - 0 | 18.60 | $275.00 | $5,115.00 |
| Gerard | 6.70 | - 0 | - 0 | - 4.00 | 2.70 | $185.00 | $499.50 |
| Mills | 13.50 | - 0 | - 0 | - 0 | 13.50 | $185.00 | $2,497.50 |

Adding the fee for each attorney together, the Court finds that the lodestar amount representing the total reasonable attorneys' fee award due to Plaintiff McCauley is $33,648.00.

## 2. Plaintiff Gros's Attorneys

### a. Nathan Kellum

Plaintiff Gros seeks attorneys' fees for 212.2 hours billed by Mr. Kellum at the rate of $400 per hour. According to his *Declaration* (Case No. 12-2322, Rec. Doc. 105-3), Mr. Kellum has been practicing law for twenty-five (25) years and is the Chief Counsel with the Center for Religious Expression (CRE) in Memphis, Tennessee. Mr. Kellum has extensive experience as lead counsel in religious speech cases and holds himself out as an expert on religious speech issues. Mr. Kellum claims that by taking this

24

case, he was precluded from taking on other representation because of CRE has limited staff. He also claims that the case imposed significant time limitations on his schedule and that because CRE took this case on a *pro bono* basis, there was no guarantee of a fee in this case, and the case would therefore be considered undesirable to most attorneys.

Mr. Kellum has calculated that he expended 221.3 total hours in this case, and he has excluded 9.1 hours of potentially unreasonable expenditures of time, which left him with a total of 212.2 billable hours (Case No. 12-2322, Rec. Doc. 105-4). He therefore contends that his fees are $84,880.

### b. Bradley Lewis

Plaintiff Gros also seeks attorneys' fees for 236.9 hours billed by Mr. Lewis, Gros's local counsel in the case, at the rate of $400 per hour. According to his *Declaration* (Case No. 12-2322, Rec. Doc. 105-5), Mr. Lewis has been practicing law for forty-two (42) years and is based in Bogalusa, Louisiana. Mr. Lewis claims extensive experience and expertise in constitutional and civil rights litigation. He claims that by taking this case, he was precluded from taking on other representation because he is the only attorney in his office. He also claims that the case imposed significant time limitations on his schedule and that he turned down other cases in order to be free to work on this case. Additionally, Mr. Lewis claims that because Plaintiff Gros did not

25

pay any fees to his office, Mr. Lewis lacked a guaranteed fee, and therefore this case would be considered undesirable to most attorneys. Mr. Lewis also contends that this type of constitutional and civil rights litigation is unique and requires extensive knowledge and expertise. He also maintains that his years of practice in the Eastern District of Louisiana and knowledge of the New Orleans legal community are valuable.

Mr. Lewis has calculated that he expended 245.0 total hours in this case, and he has excluded 8.1 hours after exercising billing judgment, which left him with a total of 236.9 billable hours (Case No. 12-2322, Rec. Docs. 105-6, 105-7, 105-8, 105-9, and 105-10). He therefore contends that his fees are $94,760.

### c. Joseph LaRue

Plaintiff Gros also seeks attorneys' fees for 34.2 hours billed by Mr. LaRue at the rate of $275 per hour. According to his *Declaration* (Case No. 12-2322, Rec. Doc. 105-11), Mr. LaRue has been practicing law for seven (7) years and is legal counsel for the Alliance Defending Freedom (ADF) in Scottsdale, Arizona. He claims expertise in free speech law and in Section 1983 civil rights litigation.

Mr. LaRue has calculated that he expended 39.8 total hours in this case, and he has excluded 5.6 hours after exercising billing judgment, which left him with a total of 34.2 billable hours (Case

No. 12-2322, Rec. Docs. 105-12, 105-13, and 105-14). He therefore contends that his fees are $9,405.00.

### d. Defendants' Arguments

Defendants contend that a reasonable hourly rate for the services of Mr. Kellum and Mr. Lewis, who have twenty-five (25) and forty-two (42) years experience respectively, is only $300.00 per hour. Defendants also contend that the number of hours Mr. Kellum and Mr. Lewis have billed are unreasonable because they billed duplicative tasks and superfluous communications between themselves, including over 100 separate entries for emails or phone calls between themselves. Defendants also point out that Plaintiff Gros's attorneys were inefficient in that they each spent significant time researching the same rules, such as the rules for consolidating cases. Defendants also argue that Mr. Kellum and Mr. Lewis should not have billed at a partner-level hourly rate for housekeeping tasks such as emailing the Judge's clerk, making copies, or making deliveries; rather, those tasks should have been delegated to a paralegal or an associate. Defendants also argue that Mr. LaRue's billed hours should also be reduced because he spent only one hour working on the complaint and after that, he only participated in the case by reviewing documents. Additionally, Defendants point out that while Plaintiff Gros's attorneys billed nearly 500 combined hours, Plaintiff McCauley's attorneys, who

actually drafted the motion for a temporary restraining order, billed only 170 combined hours.

### e. Resolution

The Court will first determine the reasonableness of the hourly rate for each attorney. Mr. Kellum has been practicing law for twenty-five (25) years and is an expert on religious speech issues. Given the cases discussed above, the Court finds that a fee of $350 per hour for Mr. Kellum's services is reasonable. Mr. Lewis has been practicing law for forty-two (42) years and is an expert on constitutional and civil rights litigation. The Court therefore finds that a fee of $350 per hour for Mr. Lewis's services is reasonable. Mr. LaRue has been practicing law for seven (7) years and is an expert in free speech law. The Court therefore finds that a fee of $185 per hour for Mr. LaRue's services is reasonable.

With respect to the reasonable number of hours billed, both Mr. Kellum and Mr. Lewis billed an astronomical number of hours for telephone and email communications with their co-counsel. Specifically, Mr. Kellum submitted 205 separate, piecemeal billing entries totaling 33.9 billable hours for communications with Mr. Lewis and Mr. LaRue. Mr. Lewis submitted 340 separate, piecemeal billing entries totaling 58 billable hours for communications with Mr. Kellum and Mr. LaRue. The Court finds this to be inappropriate and excessive. It would be unfair to require Defendants to pay such high hourly rates for excessive emails and telephone conferences

28

between attorneys. Under similar circumstances, other courts have discounted fee awards for excessive emails and telephone calls between attorneys and for overlapping time billed by multiple attorneys. *See Parker v. Matthews*, 411 F. Supp. 1059, 1067 (D.D.C. 1976), *aff'd sub nom*, *Parker v. Califano*, 561 F.2d 320 (D.C. Cir. 1977); *see also Gutmann v. Sec'y of Navy*, No. 75-1834, 1977 WL 13, at *3 (D.D.C. Aug. 23, 1977).[5] Given the grossly excessive nature of the billing for co-counsel communications among Plaintiff Gros's attorneys, the Court finds that a discount of seventy-five (75) percent is appropriate in this case. This reduces the number of hours Mr. Kellum expended on co-counsel communications by 25.43 hours, and it reduces the number of hours Mr. Lewis expended on co-counsel communications by 43.5 hours.

Additionally, Mr. Kellum itemized 0.5 hours of clerical work, including phone calls and emails with the court clerk and the undersigned's law clerk. The Court finds that these tasks could have been performed by secretaries, and the Court will therefore deduct these 0.5 hours from Mr. Kellum's total attorney fee award. Mr. Lewis itemized 3.4 hours of clerical work, including e-filing documents on the CM/ECF system, printing documents, making copies, and setting up conference calls. The Court will deduct these 3.4 hours from Mr. Lewis's total attorney fee award.

---

[5] Under the factual circumstances in *Parker and Gutmann*, the court found that discounts of twenty percent were appropriate. *See id.*

After these deductions, the number of hours expended by each of Plaintiff Gros's attorneys is as follows:

| Attorney | Hours Requested | Excessive Communications | Clerical Tasks | Hours | Hourly Rate | Fee |
|---|---|---|---|---|---|---|
| Kellum | 212.20 | - 25.43 | - 0.50 | 186.27 | $350.00 | $65,194.50 |
| Lewis | 236.90 | - 43.50 | - 3.40 | 190.00 | $350.00 | $66,500.00 |
| LaRue | 34.20 | - 0 | - 0 | 34.20 | $185.00 | $6,327.00 |

Adding the fee for each attorney together, the total attorneys' fee award due to Plaintiff Gros would be $138,021.50.

However, the Court finds that the number of hours expended by Mr. Kellum and Mr. Lewis is grossly excessive, even after the deductions the Court has already performed. District courts have broad discretion to determine the appropriate amount of attorneys' fees. *In re WNS, Inc.*, 150 B.R. 663, 664 (S.D. Tex. 1993); *see Calhoun v. Hertwig*, 363 F.2d 257 (5th Cir. 1966), *cert. denied*, 386 U.S. 1033. Therefore, the Court will use its discretion in this matter to further reduce the number of hours billed by Mr. Kellum and Mr. Lewis by fifty percent.

| Attorney | Hours After Deductions | 50% Reduction | Hourly Rate | Fee |
|---|---|---|---|---|
| Kellum | 186.27 | 93.14 | $350.00 | $32,599.00 |
| Lewis | 190.00 | 95.00 | $350.00 | $33,250.00 |

Adding the fee for each attorney together, the Court finds that the lodestar amount representing the total reasonable attorneys' fee award due to Plaintiff Gros is $72,176.00.

### 3. The Bible Believers Plaintiffs' Attorneys

#### a.  Ben Clayton

The Bible Believers Plaintiffs seek attorneys' fees for 67.73 hours  billed by Mr. Clayton at the rate of $350.00 per hour. According to his *Declaration* (Case No. 12-2322, Rec. Doc. 107-4), Mr. Clayton is local counsel for the Bible Believers Plaintiffs and has been practicing law for approximately twenty-seven (27) years.

Mr. Clayton has calculated that he expended 75.25 total hours in this case, and he has reduced his hours by 10%, which left him with a total of 67.73 billable hours (Case No. 12-2322, Rec. Doc. 107-4, p. 4-5; Case No. 12-2322, Rec. Doc. 107-5). He therefore contends that his fees are $23,705.50.

#### b. Frederick Nelson (American Liberties Institute)

The Bible Believers Plaintiffs also seek attorneys' fees for 233.37 hours billed by Mr. Nelson at the rate of $350.00 per hour. According to his *Declaration* (Case No. 12-2322, Rec. Doc. 107-2), Mr. Nelson is the President and Founder of the American Liberties Institute, a public interest organization based in Orlando, Florida. Mr. Nelson is lead counsel for the Bible Believers Plaintiffs and has been practicing law for approximately twenty-one (21) years. Mr. Nelson has extensive experience in constitutional and civil rights cases and appears to be an expert in the field. He claims that by taking this case, he was precluded from accepting other employment that would have provided a guaranteed payment of

fees and costs. He also argues that most attorneys would not have been willing to represent the Bible Believers Plaintiffs without a guarantee of payment.

Mr. Nelson has calculated that he expended 259.30 total hours in this case, and he has exercised billing judgment to exclude duplicative hours, reducing his total hours by 10% and leaving him with a total of 233.37 billable hours (Case No. 12-2322, Rec. Doc. 107-2; Case No. 12-2322, Rec. Doc. 107-3). He therefore contends that his fees are $81,679.50. Mr. Nelson has stated that this amount does not account for time subsequent to January 15, 2014, including time related to the Bible Believers Plaintiffs' claims for attorneys fees and compensatory damages.

### c. Defendants' Arguments

Defendants argue that services by Mr. Clayton and Mr. Nelson should only be billed at a rate of $300.00 per hour, the same rate that Defendants argue should be applicable to services by Mr. Kellum, Mr. Lewis, and Ms. Mince. Defendants also point out that like Mr. Kellum and Mr. Lewis, counsel for the Bible Believers Plaintiffs "are not able to articulate why nearly 300 billable hours was a reasonable amount of time to spend on this case." (Case No. 12-2322, Rec. Doc. 112, p. 7). Defendants also point out that nearly all of Mr. Clayton's recorded hours were spent emailing the other lawyers in this case. Additionally, Defendants contend that many of Mr. Nelson's hours were spent conducting depositions which

became unreasonable after the City agreed to amend the ordinance. Defendants also argue that any time spent drafting motions for summary judgment should be reduced because the City, in good faith, had already agreed to resolve the issues that the Bible Believers Plaintiffs submitted to the Court in those motions.

### d. Resolution

The Court will first determine the reasonableness of the hourly rate for each attorney. Mr. Clayton has been practicing law for approximately twenty-seven (27) years. Given the cases discussed above, the Court finds that a fee of $350 per hour for Mr. Clayton's services is reasonable. Mr. Nelson has been practicing law for twenty-one (21) years, is the President and Founder of the American Liberties Institute, and is an expert in constitutional and civil rights cases. The Court therefore finds that $350 per hour for Mr. Nelson's services is reasonable.

With respect to the reasonable number of hours billed, Mr. Clayton and Mr. Nelson, similar to Mr. Kellum and Mr. Lewis, billed an inordinate number of hours for telephone and email communications with themselves. Specifically, Mr. Clayton submitted 224 separate, piecemeal billing entries totaling 23.15 hours for communications with Mr. Nelson, and Mr. Nelson submitted 230 separate, piecemeal billing entries totaling 28.2 hours for communications with Mr. Clayton. The Court finds this to be inappropriate and excessive, and for the reasons discussed above,

the Court finds that a discount of seventy-five (75) percent is appropriate in this case. This reduces the number of hours Mr. Clayton expended on communications with Mr. Nelson by 17.36 hours, and the number of hours Mr. Nelson expended on communications with Mr. Clayton by 21.15 hours.

Additionally, Mr. Clayton billed 0.8 hours for time spent performing clerical tasks, such as sending faxes and speaking on the telephone with law clerks. The Court also finds that these tasks have been performed by secretaries and thus should not be billed at an attorney rate. The Court will therefore deduct the 0.8 hours spent on clerical tasks from Mr. Clayton's total attorney fee award.

Mr. Clayton also billed 0.1 hours labeled solely as "Legal Research" without any explanation of the topic of such research. The Court finds that this is inadequate documentation, and therefore, 0.1 hours will be deducted from Mr. Clayton's total attorney fee award.

Therefore, the number of hours expended by each of the attorneys for the Bible Believers Plaintiffs is as follows:

| Attorney | Hours Requested | Excessive Communication | Clerical Tasks | Insuff. Documentation | Reas. Hours | Hourly Rate | Fee |
|---|---|---|---|---|---|---|---|
| Clayton | 67.73 | - 17.36 | - 0.80 | - 0.10 | 49.47 | $350.00 | $17,314.50 |
| Nelson | 233.37 | - 21.15 | - 3.40 | - 0 | 208.82 | $350.00 | $73,087.00 |

However, the Court finds that the number of hours expended by Mr. Nelson in this matter is grossly excessive, even after the

deductions the Court has already performed. Therefore, the Court will use its discretion to further reduce Mr. Nelson's hours by fifty percent.

| Attorney | Hours After Deductions | 50% Reduction | Hourly Rate | Fee |
|----------|------------------------|---------------|-------------|-----|
| Nelson | 208.82 | 104.41 | $350.00 | $36,543.50 |

Adding the fee for each attorney together, the Court finds that the lodestar amount representing the total reasonable attorneys' fee award due to the Bible Believers Plaintiffs is $53,858.00.

### E. *Johnson* Factors

Defendants argue that any award of attorneys' fees should be reduced based on the *Johnson* factors. As discussed above, the lodestar figures are presumptively reasonable, but the Court must nevertheless consider the twelve *Johnson* factors to determine whether they warrant a downward adjustment or, in rare cases, an upward adjustment of the lodestar amounts.

### 1. Time and Labor Required

The Court finds that the lodestar amounts calculated above fairly account for the time and labor expended by each attorney in this case, and so no upward adjustment is warranted based on this factor. Neither is a downward adjustment warranted because the Court carefully determined the reasonableness of the hourly rate and the number of hours billed by each attorney when calculating the lodestar amounts.

### 2. Novelty and Difficulty of the Questions

This case presented various legal issues, including First Amendment questions and issues regarding prevailing party status. However, the Court finds that the issues in this case were not sufficiently novel or difficult to warrant an upward adjustment, especially given the fact that the unamended ordinance was facially unconstitutional.

### 3. Skill Requisite to Perform the Legal Service Properly

The skill of each attorney is already accounted for in the lodestar calculations.

### 4. Preclusion of Other Employment

Despite the contention of Mr. Kellum, Mr. Lewis, and Mr. Nelson that they were precluded from taking other employment by virtue of the time and resources required to be expended in this case, the Court finds that this factor does not warrant an upward adjustment of the lodestar amount.

### 5. Customary Fee

The customary fees charged by each attorney are already accounted for in the lodestar calculations.

### 6. Fixed or Contingent Fee

The Court finds that this factor does not warrant an upward or downward adjustment of the lodestar amount.

### 7. Time Limitations Imposed by Client or Circumstances

The Court finds that there were no particular time limitations or constraints imposed on counsel in this matter that would warrant an upward or downward adjustment.

### 8. Amount Involved and Results Obtained

Plaintiffs' counsel largely achieved the goals they were attempting to achieve. All Plaintiffs received nominal damages for violation of their constitutional rights, and the Bible Believers Plaintiffs who were arrested received compensatory damages. However, the Bible Believers Plaintiffs were unsuccessful in arguing that the language of the amended ordinance regarding obscenity was unconstitutional. Considering these circumstances, the Court finds that no upward or downward adjustment is warranted based on this factor.

### 9. Experience, Reputation, and Ability of Attorneys

The experience, reputation, and ability of each attorney is already accounted for in the lodestar calculations.

### 10. Undesirability of the Case

Despite the contention of Mr. Kellum and Mr. Lewis that this type of case would be undesirable to most attorneys because they represented Plaintiff Gros on a *pro bono* basis, the Court finds that this factor does not warrant an upward adjustment of the lodestar amount.

**11. Nature and Length of Professional Relationship with Client**

There is no evidence that any attorney discounted his or her fees because any of the Plaintiffs were longstanding clients, and so this factor does not warrant an upward adjustment from the lodestar amounts.

**12. Awards in Similar Cases**

This factor is neutral because the Court already considered recent awards of attorneys' fees in this district and took those awards into account when calculating the lodestar amounts.

Because it appears that none of the *Johnson* factors warrants an upward or downward adjustment from the lodestar amounts, the Court finds that the lodestar amount calculated for each attorney is the correct award in this case.

**F. Costs**

The Court has discretion to award reasonable costs to a prevailing party. *See* 28 U.S.C.A. § 1920 (West 2008). However, the Court "may only award those costs articulated in [S]ection 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (internal citations omitted). Plaintiffs' counsel have itemized costs that they believe are recoverable.

## 1. Plaintiff McCauley

### a. Justin Harrison

Mr. Harrison has itemized a $350 filing fee, and filing fees are generally recoverable under Section 1920. *Marsala v. Mayo*, No. 06-3846, 2014 WL 1276187, at *4 (E.D. La. Mar. 27, 2014) (Feldman, J.). Therefore, the Court will award $350 in filing fees to Plaintiff McCauley.

### b. Loretta Mince

Ms. Mince has itemized costs for courier expenses, long distance call expenses, and online research performed on Westlaw and Pacer, none of which is recoverable under Section 1920. *See Speaks v. Kruse*, No. 04-1952, 2006 WL 3388480, at *8 (E.D. La. Nov. 20, 2006) (Livaudais, J.); *see also Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 582 (W.D. Tex. 2010), *aff'd*, 430 F. App'x 359 (5th Cir. 2011); *see also Marsala*, 2014 WL 1276187, at *4; *see also Auto Wax Co., Inc. v. Mark V. Prods. Inc.*, No. 99-0982, 2002 WL 265091, at *10 (N.D. Tex. Feb. 22, 2002). Therefore, the Court declines to award these costs.

In addition, Ms. Mince has itemized costs for copy expenses, which are recoverable under Section 1920 "where the copies are necessarily obtained for use in the case." 28 U.S.C.A. § 1920 (West 2008). Copy costs should not be awarded where the copies were made merely for the convenience of counsel. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009) (citing *Fogleman v.*

*ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)). In *Zapata*, the prevailing party sought costs for photocopies and provided the Court with columns of numbers that were meant to represent the costs of photocopies made; however, the party failed to provide the Court with any information regarding the documents that were copied, how the copies were used, or why the copies were necessary. *Zapata Gulf Marine Corp. v. Puerto Rico Mar. Shipping Auth.*, 133 F.R.D. 481, 484 (E.D. La. 1990) (Mentz, J.). The Court found that the party's claim for copy costs was "essentially undocumented" and therefore could not be allowed. *Id.* Here, Ms. Mince has provided the Court with no information by which the Court could determine that the copies made were necessarily obtained for use in the case and were not merely made for the convenience of counsel. Therefore, the Court declines to award copy costs. Because none of Ms. Mince's itemized expenses are recoverable, the Court will make no award of costs to Plaintiff McCauley based on Ms. Mince's *Affidavit*.

### 2. Plaintiff Gros

#### a. Nathan Kellum

Mr. Kellum claims $5,326.04 in expenses. This includes $1,036.04 in travel expenses, including airfare, the airport shuttle, baggage checks, meals, lodging, and parking. This also includes $4,290 in "expert testimony attorneys' fees" for the services of William D. Treeby, who appears to have assisted Mr. Kellum in reviewing the hourly rates and number of hours billed for

40

each of Plaintiff Gros's attorneys. Travel expenses are not enumerated in Section 1920 and thus are not recoverable. *See* 28 U.S.C.A. § 1920 (West 2008); *see also Speaks*, 2006 WL 3388480, at *8. Additionally, the Court finds that any purported expert services offered by Mr. Treeby to assist Plaintiff Gros's attorneys in preparing their motion for attorneys' fees are not recoverable fees. Therefore, no costs will be awarded to Mr. Kellum. Because none of Mr. Kellum's itemized expenses are recoverable, the Court will make no award of costs to Plaintiff Gros based on Mr. Kellum's *Declaration*.

### b. Bradley Lewis

Mr. Lewis claims $4,507.30 in expenses. He states that the Alliance Defending Freedom (ADF) reimbursed him in the amount of $4,422.55, but he has not been reimbursed for the remaining $84.75. The $4,422.55 in expenses paid by ADF includes $550 in filing fees, $628.30 paid to a private process server named Glenn Stewart Gay, $138.60 in copy costs for copies of pleadings for service on Defendants, $30.86 for first class and certified mail costs, $575.53 in conference call costs, $38.00 in parking fees, $327.66 for mileage and tolls, and $2,133.60 in court reporter and deposition costs. The $84.75 that were was not paid by ADF is another mileage charge.

For the reasons discussed above, Plaintiff Gros will not be awarded costs for first class or certified mail, conference call

costs, parking fees, mileage, or tolls. However, the Court will award $550 in filing fees and will also award $2,133.60 in court reporter and deposition costs. *See A.B.C. Packard, Inc. v. Gen. Motors Corp.*, 275 F.2d 63, 75-76 (9th Cir. 1960). The Court will also award $138.60 in copy costs because Mr. Lewis has provided the Court with sufficient information regarding what was copied and how those copies were used.

With respect to the private process server expenses, in the Fifth Circuit, the costs of private process servers are generally not recoverable under Section 1920 absent exceptional circumstances. *Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 974-75 (S.D. Tex. 2011) (citing *Marmillion v. Am. Int'l Ins. Co.*, 381 Fed. App'x 421, 431 (5th Cir. 2010)). Even in such exceptional circumstances, a party can generally only recover costs for private process servers to the extent that those costs do not exceed the cost that the U.S. Marshal would charge to effect service. *Id.* at 975. Where a prevailing party fails to show exceptional circumstances and fails to provide the court with evidence of the amount that the U.S. Marshal would charge for service, an award of private process server fees is not warranted. *See id.* Because Mr. Lewis has failed to show exceptional circumstances or to provide the Court with evidence of the amount that the U.S. Marshal would charge in this case, the Court declines

to award private process server fees in this case. Therefore, the total expense award due to Plaintiff Gros is $2,822.20.

### c. Joseph LaRue

In his *Declaration* (Case No. 12-1322, Rec. Doc. 105-11), Mr. LaRue does not appear to itemize any expenses aside from those expenses already reported by Mr. Lewis.

### 3. Bible Believers Plaintiffs

#### a. Ben Clayton

Mr. Clayton has not claimed any expenses in this matter.

#### b. Frederick Nelson (American Liberties Institute)

Mr. Nelson claims expenses for telephone conferences, postage, travel, and online research, which are not recoverable for the reasons discussed above. Mr. Nelson also itemizes several facsimile costs, which the Court finds are generally not recoverable under Section 1920. *See Pinkham v. Camex, Inc.*, 84 F. 3d 292, 294-95 (8th Cir. 1996). Mr. Nelson also claims $469.28 in filing fees, court fees, and *pro hac vice* fees, as well as $524.15 in deposition fees, which the Court will award. Therefore, the Bible Believers Plaintiffs are entitled to expenses in the total amount of $993.43.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motions for attorneys' fees and costs **(Case No. 12-2322, Rec. Docs. 105, 106, & 107)** are **GRANTED.**

43

    **IT IS FURTHER ORDERED** that Defendants shall pay to Plaintiff McCauley $33,648.00 in attorneys' fees and $350.00 in costs.

    **IT IS FURTHER ORDERED** that Defendants shall pay to Plaintiff Gros $72,176.00 in attorneys' fees  and $2,822.20 in costs.

    **IT IS FURTHER ORDERED** that Defendants shall pay to the Bible Believers Plaintiffs $53,858.00 in attorneys' fees and $993.43 in costs.

    New Orleans, Louisiana this 3rd day of June, 2014.



_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE